IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR 122-081 |
| | ) | |
| KEYEON DEMAR TYKEIM SMITH | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Defendant, charged with illegal possession of a firearm in violation of 18 U.S.C. § 922(n), contends the charging statute is unconstitutional and seeks dismissal of the Indictment. After careful consideration of all briefing and oral argument, the Court **REPORTS** and **RECOMMENDS** Defendant's motion be **DENIED**. (Doc. no. 26.)

## I.   FACTUAL BACKGROUND

Section 922(n) provides as follows:

**(n)** It shall be unlawful for any person who is under indictment for a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition or receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(n). Under § 922(n), "the term 'indictment' includes any indictment or information in any court under which a crime punishable by imprisonment for a term exceeding one year may be prosecuted." Id. § 921(a)(14).

Count One of the Indictment provides as follows:

On or about May 17, 2022, in Richmond County, within the Southern District of Georgia, the defendant, **KEYEON DEMAR TYKEIM SMITH**, knowing that he was then under indictment for a crime punishable by imprisonment for a

term exceeding one year, did willfully receive a firearm, to wit, a Taurus, model
FT-111 Millennium G2, 9mm pistol, which had been transported in interstate
and foreign commerce.  All in violation of Title 18, United States Code, Section
922(n).

(Doc. no. 1.)  In May 2022, Defendant was under felony information from the State of

Arkansas for the offense of Domestic Battery in the Third Degree, a Class D felony carrying a

maximum potential penalty of six years in confinement.  (See doc. no. 32, p. 4; doc. no. 40, p.

1, Ex. 1.)

## II.   LEGISLATIVE HISTORY OF § 922(N)

Section 922(n) traces its roots to the 1938 Federal Firearms Act, which prohibited

persons indicted for, or convicted of, a violent crime from shipping or transporting a firearm

in interstate commerce.   See, e.g., United States v. Laurent, 861 F. Supp. 2d 71, 82-84

(E.D.N.Y. Dec. 2, 2011) (recounting history of § 922(n)); Federal Firearms Act of 1938, Pub.

L. No. 850, § 2(e), 52 Stat. 1250, 1251 (1938) (repealed 1968).  In 1961, Congress expanded

the statute to include persons indicted on any felony, both violent and non-violent.  Laurent,

861 F. Supp. 2d at 83; Act of Oct. 3, 1961, Pub. L. No. 87-342, 75 Stat. 757 (repealed 1968).

The purpose of the 1961 Act was "'[t]o strengthen the Federal Firearms Act,'" and "'make it

more difficult for the criminal elements of our society to obtain firearms.'"  Laurent, 861 F.

Supp. 2d at 83 (quoting S. Rep. No. 364, 87th Cong., 1st Sess. 2 (1961)).

In 1968, the Firearm Owners Protection Act added receipt of a firearm to the list of

prohibited conduct and a person charged with a felony by information to the scope of

prohibited persons.  Id. (citing 18 U.S.C. § 921(a)(14)).  "As described by the Supreme Court,

the 1968 Act reflects a concern with keeping firearms out of the hands of categories of

potentially irresponsible persons, including convicted felons."  Id.  (citing S. Rep. No. 1501,

2

90th Cong., 2d Sess., 22 (1968), 1968 U.S.C.C.A.N. 2112, 2113).   In 1986, Congress consolidated two subsections into the current § 922(n) without any changes to the scope of prohibited persons or conduct.   Id. (citing Firearms Owners' Protection Act, Pub. L. 99-308, 100 Stat. 449 (1986)).

## III.    DISCUSSION

Primarily citing N.Y. State Rifle & Pistol Ass'n v. Bruen, __ U.S. __, 142 S. Ct. 2111, 2120-22 (2022), Defendant argues § 922(n) is unconstitutional (1) on its face because it is inconsistent with the Nation's historical tradition of firearm regulation; and (2) as applied to him because it limits his Second Amendment rights based on charges brought by felony information without the procedural safeguards of a grand jury proceeding and despite the presumption of innocence.  (Doc. nos. 26, 40.)  The government argues Defendant does not qualify for coverage under the Second Amendment and § 922(n) is constitutional.  (Doc. nos. 30, 41.)  As explained below, the Court assumes Defendant qualifies for Second Amendment coverage and recommends rejecting the argument that § 922(n) is unconstitutional.

### A.    Heller, Bruen, and The National Discourse Concerning §922(n)

In the wake of District of Columbia v. Heller, 554 U.S. 570, 606-19 (2008), the Eleventh Circuit and a multitude of other federal courts determined the constitutionality of a gun regulation by (1) asking whether the Second Amendment protected the conduct that the government sought to restrict; and (2) if so, applying "the appropriate level of means-end scrutiny." Nat'l Rifle Ass'n v. Bondi, 61 F.4th 1317, 2023 WL 2484818, at *3 (11th Cir. Mar. 9, 2023).  In Bruen, the Supreme Court rejected the second step of this analysis while reaffirming Heller.  142 S. Ct. at 2111, 2120-22.

Under <u>Bruen</u>, when the Second Amendment covers a defendant and his course of conduct, "the burden shifts to the government to demonstrate that its regulation 'is consistent with the Nation's historical tradition of firearm regulation.'" <u>Bondi</u>, 2023 WL 2484818, at *5-6 (quoting <u>Bruen</u>, 142 S. Ct. at 2130, 1234).  Stated differently, the government must show § 922(n) is "part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." <u>Bruen</u>, 142 S. Ct. at 2127.  This inquiry involves, "'reasoning by analogy' to determine whether historical firearms regulations are 'relevantly similar'" to     § 922(n), taking into consideration how and why it burdens a citizen's right to bear arms. <u>Bondi</u>, 2023 WL 2484818, at * 6 (quoting <u>Bruen</u>, 142 S. Ct. at 2132).  The Supreme Court "generally assume[s] that the scope of the protection applicable to the Federal Government and States is pegged to the public understanding of the right when the Bill of Rights was adopted in 1791." <u>Bruen</u>, 142 S. Ct. at 2137.

In the eight months since the Supreme Court decided <u>Bruen</u>, approximately ten district courts have considered the constitutionality of § 922(n), and the Eastern District of California tallied the results as follows:

> In the wake of *Bruen*, the following district courts have held Section 922(n) as unconstitutional after applying the *Bruen* framework.  *See United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482 (W.D. Tex. Sept. 19, 2022) (finding Section 922(n) invalid because the statute is inconsistent with the Nation's historical tradition of firearm regulation); *United States v. Stambaugh*, No. CR-22-00218-PRW-2, 2022 WL 16936043 (W.D. Okla. Nov. 14, 2022) (same), *reconsideration denied,* No. CR-22-00218-PRW-2, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023); *United States v. Hicks*, No. W:21-CR-00060-ADA, 2023 WL 164170 (W.D. Tex. Jan. 9, 2023) (relying on *Quiroz*, found Section 922(n) invalid), *appeal docketed*, No. 23-50030 (Jan. 12, 2023); *United States v. Holden*, No. 3:22-CR-30 RLM-MGG, 2022 WL 17103509 (N.D. Ind. Oct. 31, 2022) (same), *appeal docketed*, No. 22-3160 (Dec. 1, 2022).

In contrast, three district courts have found Section 922(n) constitutional, and the Fifth Circuit has recognized the statute as valid applying plain error analysis. *See United States v. Kays*, No. CR-22-40-D, 2022 WL 3718519, (W.D. Okla. Aug. 29, 2022) (found Section 922(n) consistent with the Nation's historical tradition of firearm regulation); *United States v. Kelly*, No. 3:22-CR-00037, 2022 WL 17336578 (M.D. Tenn. Nov. 16, 2022) (same); *United States v. Rowson*, No. 22 CR. 310 (PAE), 2023 WL 431037 (S.D.N.Y. Jan. 26, 2023) (same); *United States v. Avila*, No. 22-50088, 2022 WL 17832287 (5th Cir. Dec. 21, 2022) (applying plain error review because defendant had not brought a Second Amendment challenge below, found Section 922(n) constitutional).

United States v. Bartucci, No. 1:19-CR-00244-ADA-BAM, 2023 WL 2189530, at *4 (E.D. Cal. Feb. 23, 2023); see also United States v. Jackson, No. CR-ELH-22-141, 2023 WL 2242873, at *18 (D. Md. Feb. 27, 2023) (finding § 922(n) unconstitutional).  The Fifth Circuit Court of Appeals is poised to be the first of its sister courts to decide the issue in United States v. Quiroz, __ F. Supp. 3d __, No. PE:22-CR-00104-DC, 2022 WL 4352482 (W.D. Tex. Feb. 8, 2023) (No. 22-50834) (oral arguments held on Feb. 8, 2023).  The Court has benefitted from the depth and thoroughness of these decisions.

## B.   Section 922(n) Is Constitutional On its Face

The Court assumes the Second Amendment covers Defendant and his course of conduct.  Notably, federal courts appear to agree the Second Amendment covers persons under felony indictment or information,[1] and the conduct of shipping, transporting, and receiving

---

[1] See Jackson, 2023 WL 2242873, at *8.  ("Nevertheless, to my knowledge, of the few district courts that have specifically addressed the constitutionality of § 922(n) post-Bruen, they have all concluded that the plain text of the Second Amendment covers the conduct of individuals under indictment."); see also United States v. Rowson, No. CR-22-310 (PAE), 2023 WL 431037, at *15 (S.D.N.Y. Jan. 26, 2023) (finding post-Bruen cases invalidating and validating § 922(n) consider indictees part of "the people" covered by Second Amendment); United States v. Kays, No. CR-22-40-D, 2022 WL 3718519, at *2 (W.D. Okla. Aug. 29, 2022) ("This court declines to read into Bruen a qualification that Second Amendment rights belong only to individuals who have not been accused of violating any laws."); United States v. Stambaugh, No. CR-22-00218-PRW-2, 2022 WL 16936043, at *2 (W.D. Okla. Nov. 14, 2022), reconsideration denied, No. CR-22-

firearms.[2]   The Court thus turns to the second step of <u>Bruen</u> to determine whether the government has demonstrated § 922(n) is consistent with the Nation's historical traditions of firearm regulation.

As recounted in § II *supra*, Congress did not adopt the full breadth of § 922(n) until 1968, when it added receipt of a firearm to the list of prohibited conduct for persons under felony indictment or information.   Such regulations do not interfere with the scope of the Second Amendment as it was understood in 1791 because of relevantly similar firearm regulations existing at or near this period of time.   One needs to look no further than <u>Bruen</u> and <u>Heller</u> for several convincing examples.   <u>See</u> <u>Bruen</u>, 142 S. Ct. at 2139-56; <u>Heller</u>, 554 U.S. at 606-19.

Surety statutes from the mid-nineteenth century, as described by the Court in <u>Bruen</u>, "required any person who was reasonably likely to 'breach the peace,' and who, standing accused, could not prove a special need for self-defense, to post a bond before publicly carrying a firearm." <u>Bruen</u>, 142 S. Ct. at 2148.   Under these statutes, "an individual's carrying of arms was 'sufficient cause to require him to give surety of the peace' only when 'attended with circumstances giving just reason to fear that he purposes to make an unlawful use of them.'" <u>Id.</u>

---

00218-PRW-2, 2023 WL 172037 (W.D. Okla. Jan. 12, 2023) ("Therefore, as a person who is presumed to be a law-abiding citizen until proven otherwise at trial, [Defendant] remains part of 'the people' whom the Second Amendment protects.").

[2] <u>See</u> <u>Bondi</u>, 2023 WL 2484818, at *6 ("Of course, the Second Amendment's plain text includes only a right 'to keep and bear arms,' not a right to buy them. U.S. CONST. amend II.   That said, our sister circuits have found that the right to keep and bear arms includes the right to acquire them.").

The similarity to § 922(n) is obvious.  When an indictment or information establishes probable cause to believe a person has committed a felony offense, there is sufficient cause to fear the illegal use of a firearm if, while the charge is pending, the accused person ships, transports, or receives a firearm in interstate commerce.  As explained by the court in Rowson, "the period in which an indictment pends is 'a volatile period during which the stakes and stresses of pending criminal charges often motivate defendants to do violence to themselves or to others,' thereby reasonably giving rise to fear threats or violence."  Rowson, 2023 WL 431037, at *24 (citing Kays, 2022 WL 3718519, at *4).  Several post-Bruen decisions recognize the similarities between these old surety laws and § 922(n) when finding § 922(n) does not violate the Second Amendment.[3]

In addition to the surety laws, there is a long and regrettable history of state legislatures prohibiting firearm possession by classes of citizens who, like persons under felony indictment or information, were perceived as elevated risks of dangerousness or criminality based on religion, race, or political identities.  These laws are cataloged in Rowson, and the sources cited therein.  2023 WL 431037, at *21.  Certainly, such efforts were obviously misguided, but their existence proves a common, historical understanding the Second Amendment allows regulations curtailing gun rights by people legislatures identify as posing heightened risks of criminality or dangerousness.  As other courts have concluded, these unfortunate examples

---

[3] See Rowson, 2023 WL 431037, at *24 (finding surety laws relevantly similar to § 922(n)); Bartucci, 2023 WL 2189530, at *10 (citing Bruen, 142 S. Ct. at 2133) ("Accordingly, although Section 922(n) may not be a 'dead ringer for historical precursors,' this Court finds that it is sufficiently analogous to pass constitutional muster."); United States v. Gore, No. 2:23-CR-04, 2023 WL 2141032, at *4 (S.D. Ohio Feb. 21, 2023) ("Because it imposes a comparable burden and has a comparable justification to historical surety laws, § 922(n) is facially valid under the Second Amendment."); Jackson, 2023 WL 2242873, at *16 (finding §922(n) constitutional based on sufficient analogy to surety laws).

support the conclusion § 922(n) comports with the Nation's understanding of appropriate gun regulations under the Second Amendment.  See, e.g., id. ("There is also ample evidence of colonial and revolutionary-era laws that disarmed groups of people perceived as *per se* dangerous, on the basis of their religious, racial, and political identities.").

Just as importantly, the Supreme Court explained in Heller that nothing in its decision "should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ."  Heller, 554 U.S. at 626-27.  These presumptively valid and historical regulations are also relevant and similar to § 922(n) because they restrict or eliminate the gun rights of people who present heightened risks of criminality or dangerousness.  Citing this same passage from Heller, the Eleventh Circuit rejected a constitutional challenge to § 922(g)(9), which prohibits possession of a firearm by a person convicted of a misdemeanor domestic offense.  United States v. White, 593 F.3d 1199, 1205-06 (11th Cir. 2010).  The Eleventh Circuit determined § 922(g)(9), "warrants inclusion on Heller's list of presumptively lawful longstanding prohibitions" because domestic abusers pose a higher risk of criminality and dangerousness.  Id.  As explained *supra*, the same can be said of a person charged with a felony who attempts to ship, transport, or receive a firearm while awaiting a criminal trial.

Another consideration worth mentioning, despite its marginal relevance after Bruen, is the unusually narrow scope of § 922(n), which prohibits only the shipping, transport, and receipt of a firearm during the narrow timeframe in which a felony indictment or information is pending.  No violation occurs if a person charged with a felony maintains possession of a firearm received prior to the indictment or information.  Other courts considering § 922(n) after Bruen have noted this same narrow scope as supporting a finding the law is

constitutional.[4]  While <u>Bruen</u> rejected means-ends scrutiny, courts should hesitate to read the decision, "as wholly forbidding courts from engaging in this narrower type of supplemental common-sense reasoning that, for example . . . temporary restrictions are typically less problematic than permanent ones, and so forth." <u>Kelly</u>, 2022 WL 17336578, at *6.

## C.    Section 922(n) Is Constitutional as Applied to Defendant

Defendant argues § 922(n) is unconstitutional as applied to him because it limits his Second Amendment rights based on an information issued by a prosecutor without the important safeguard of a grand jury determination of probable cause.  (<u>See generally</u> doc. nos. 26, 40.)  Defendant makes this argument only within the confines of his Second Amendment challenge, to support his assertion under the first step of <u>Bruen</u>, that he qualifies for coverage under the Second Amendment.   As explained in § III(B) *supra*, the Court has assumed Defendant qualifies for Second Amendment coverage.

Defendant does not argue § 922(n) violates the Fourteenth Amendment by limiting his Second Amendment rights based on a felony information that fails to provide him with adequate due process, and the Court will not decide an issue Defendant has not raised. Notably, however, to bring the domestic battery charge against Defendant, the prosecuting attorney signed the Information and submitted a sworn Affidavit for Warrant of Arrest from

---

[4] <u>See</u> <u>Rowson</u>, 2023 WL 431037, at *20 ("[§ 922(n)] precludes only the shipping, receipt, or transport of a firearm during the indictment period, leaving the felony indictee free to possess firearms."); <u>Bartucci</u>, 2023 WL 2189530, at *8 ("It can also be said that the burden imposed by Section 922(n) is less than the historical dangerousness laws because Section 922(n) only prohibits an individual under indictment from shipping, transporting, or receiving a firearm for a temporary period; it does not prohibit possession of a firearm."); <u>Jackson</u>, 2023 WL 2242873, at *17 ("Critically, § 922(n) does not entirely restrict an individual's Second Amendment rights, as it does not bar possession of a firearm.").

an investigator setting forth facts establishing probable cause.[5]  The judge countersigned the affidavit and made a formal finding of probable cause.  These actions complied with Arkansas law, and courts have long held charging a felony by information is constitutionally sufficient. Ark. R. Crim. P. 7.1; Ark. Code Ann. § 16-81-104; see also McDonald v. State of Arkansas, 501 F.2d 385, 387-89 (8th Cir. 1974) (noting well-established precedent that Arkansas procedure for charging by information does not violate accused's constitutional rights); see also Lem Woon v. State of Oregon, 229 U.S. 586, 590 (1913) (rejecting the argument that charging by information violates due process); Hurtado v. California, 110 U.S. 516, 538 (1884) (finding charging by information legally sufficient to move forward in criminal case as if indicted by grand jury).

The same process, i.e., making a judicial finding of probable cause based on an investigating officer's affidavit, is a sufficient basis to make an arrest, search a defendant's house, and seize a defendant's personal possessions.  Illinois v. Gates, 462 U.S. 213, 275 (1983) ("[A] neutral and detached magistrate . . . should determine whether there is probable cause to support the issuance of a warrant."); U.S. CONST. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized"); 21 U.S.C. § 853(f) ("If the court determines that there is probable cause [for] property to be seized. . . the court shall issue a warrant authorizing the seizure of such property"); Fed. R. Crim. P. 41 (A court must "issue the warrant if there is probable cause to search for and seize a person or property.").

---

[5] The Court takes judicial notice of the criminal docket and pleadings for Defendant's state of Arkansas case, available at: https://caseinfo.arcourts.gov/cconnect/PROD/public/ck_ public_qry_cpty.cp_personcase_setup_idx and attaches the referenced pleadings as Exhibit A.

Furthermore, a federal court may strip a defendant charged by information of all Second Amendment rights under the Bail Reform Act of 1984. 18 U.S.C. § 3142(c)(1)(B)(viii). The limited and temporary curtailment of Defendant's gun rights under § 922(n) is less severe than all these deprivations.

Finally, in the context of his Second Amendment argument, Defendant invokes the presumption of innocence, arguing § 922(n) curtails his rights before a jury determines his guilt or innocence. The presumption of innocence, however, is a narrow doctrine that only applies at the criminal trial itself to further define the government's burden of proof. Bell v. Wolfish, 441 U.S. 520, 533 (1979). The presumption of innocence "has no application to a determination of the rights of [a defendant] before his trial has even begun." Id.

## IV.   CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** Defendant's motion to dismiss the indictment and declare 18 U.S.C. § 922(n) as unconstitutional be **DENIED**. (Doc. no. 26.)

SO REPORTED AND RECOMMENDED this 29th day of March, 2023, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

# EXHIBIT A

IN THE CIRCUIT COURT OF HEMPSTEAD COUNTY, ARKANSAS
8N DIVISION

STATE OF ARKANSAS                                                    PLAINTIFF

VS.                              NO. CR -19-382-1

KEYEON SMITH                                                         DEFENDANT

319 Ave C Street W.
Hope, AR 71801

| Code # | Offense | A/C/S | F/M | Class |
|--------|---------|-------|-----|-------|
| 5-26-305(b)(2) | DOMESTIC BATTERY 3RD DEGREE (PREGNANT WOMAN) | | F | D |

DOB  12/12/2000
RACE B
SEX   Male

**INFORMATION**

    Comes the Prosecuting Attorney, Christi McQueen, for the 8N District of
HEMPSTEAD County, Arkansas, and in the name and by the authority of the State of
Arkansas, charges **Keyeon Smith** with the crime of **DOMESTIC BATTERY 3RD
DEGREE (PREGNANT WOMAN)** as follows:

**COUNT 1: DOMESTIC BATTERY 3RD DEGREE (PREGNANT WOMAN) ARK. CODE
ANN. § 5-26-305(b)(2).** The said defendant in the 8N District of HEMPSTEAD
COUNTY, on or about October 2, 2019, with the purpose of causing physical injury to a
family or household member, did unlawfully and feloniously cause physical injury to a
family or household member, Shuguita Sheppard, who he knew or should have known
was pregnant, in violation of §5-26-305 against the peace and dignity of the State of
Arkansas.

**PENALTY -- CLASS D FELONY:** Imprisonment in the Arkansas Department of
Correction for a term not more than six (6) years or a fine not exceeding $10,000.00 or
both such fine and imprisonment.

                            CHRISTI MCQUEEN
                            Prosecuting Attorney

By: _____
                      Deputy Prosecuting Attorney

2

## AFFIDAVIT FOR WARRANT OF ARREST

**HPD Inc# 20191736**

**KEYEON SMITH**
DEFENDANT'S NAME

**B/M 12/01/2000**
RACE/SEX/DOB

29CR-19-382-1

Felony ☒ Misdemeanor ☐

**319 AVE C ST W HOPE AR 71801**
ADDRESS

TELEPHONE

Pursuant to Rule 7.1 of the Arkansas Rules of Criminal Procedure, the undersigned Affiant (s) being duly sworn, deposes and says that he/she had reason to believe that the above named person has committed the offense of violating Arkansas code:

**DOMESTIC BATTERY IN THE 3RD DEGREE (FEL- D)**              5-26-305

On or about the **2nd** day of **OCTOBER**, 2019 committed by:

**A person commits domestic battering in the third degree if: (1) With the purpose of causing physical injury to a family or household member, the person causes physical injury to a family or household member.(2)  However, domestic battering in the third degree is a Class D felony if: (A)  Committed against a woman the person knew or should have known was pregnant;**

In Hempstead County, Arkansas against the peace and dignity of the State of Arkansas.

### FACTS CONSTITUTING REASONABLE CAUSE

**On 10/2/2019 at approximately 0750 hours, Reporting Officer J. Haynie and Sgt. D. Townsend received a call from the police dispatcher regarding a disturbance, located at 417 block of North Hervey Street, also referred to as Subway, in Hope, Hempstead County, Arkansas.**

**Upon arrival, Officer Haynie made contact with Shuquita Sheppard and she provided the following information. Sheppard and Keyeon Smith have been in a dating relationship for approximately 2 years. Smith got released from jail and was upset with Sheppard because of rumors being spread about Sheppard. Smith woke up at approximately 0600 hours while the two were at 313 North Washington Street and started harassing Sheppard and Smith struck Sheppard in the face multiple times. Smith then began throwing Sheppard's belongings outside in the yard, when Sheppard took Smith's phone he began punching her again. Sheppard left on foot in an attempt to call the police. Smith threatened Sheppard about taking her baby. Sheppard is approximately 9 months pregnant.**

I swear that the allegations contained herein are the truth, the whole truth, and nothing but the truth.

AFFIANT                                                    AFFIANT

**LAUTERBACH, DANIEL TODD**
**DETECTIVE**
**HOPE POLICE DEPARTMENT**

SIGNED BEFORE ME THIS __ **4** DAY OF __ **October** ____, 20 **19** .

NOTARY / JUDGE                                  COMMISSION EXPIRES

3

REVIEWED BY PROSECUTOR: _____     ARREST: YES ☐   NO ☐

I HEREBY FIND THAT THIS SWORN AFFIDAVIT DEMONSTRATES REASONABLE AND
PROBABLE CAUSE FOR THE ISSUANCE OF A WARRANT (S) FOR THE ABOVE NAMED
PERSON FOR THE ABOVE STATED OFFENSE (S).  I FURTHER DIRECT THE
DISTRICT / CIRCUIT CLERK OF HEMPSTEAD COUNTY TO ISSUE AN ARREST WARRANT FOR
THE ABOVE NAMED DEFENDANT.

_____          ___10/4/19_____
CIRCUIT / DISTRICT JUDGE            DATE
HEMPSTEAD COUNTY

HPD Inc# 20191736

IN THE CIRCUIT COURT OF HEMPSTEAD COUNTY, ARKANSAS

STATE OF ARKANSAS                          PLAINTIFF

VS.                                        NO. 29 CR. 19-382-1

KEYEON SMITH

## RECORD OF FIRST JUDICIAL APPEARANCE

DEFENDANT APPEARED IN COURT ON THE BELOW DATE AND WAS ADVISED OF
THE FOLLOWING:

1.  THAT HE/SHE HAS BEEN ARRESTED ON:

    A:  ☐ A WARRANT ISSUED FROM THE CIRCUIT COURT
                    OR
    B:  ☐ PROBABLE CAUSE FOUND BY THE CIRCUIT/DISTRICT COURT.

FOR THE OFFENSE OF:

**DOMESTIC BATTERY IN THE 3RD DEGREE (FEL- D)**      ACA: 5-26-305

2.  THAT HE/SHE HAS THE RIGHT TO REMAIN SILENT AND THAT ANYTHING HE/SHE
    SAYS CAN BE USED AGAINST HIM/HER.

3.  THAT HE/SHE HAS THE RIGHT TO HAVE A REASONABLE OPPORTUNITY TO
    COMMUNICATE WITH HIS/HER ATTORNEY, FAMILY AND FRIENDS.

4.  THAT HE/SHE HAS THE RIGHT TO REPRESENTATION BY AN ATTORNEY AND IF
    HE/SHE CANNOT AFFORD AN ATTORNEY, ONE WILL BE APPOINTED TO HIM/HER AT
    NO COST.

    _Public Defender's office_   (APPOINTED) RETAINED.

5.  THAT HIS/HER NEXT COURT APPEARANCE DATE IS ___October 29, 2019 At 9:00 A.m.___

6.  THAT HIS/HER BOND IS SET AT ___OR Bond no contact Serginia Shepherd___

    SIGNED THIS ___4___ DAY OF ___October___, 2019.

    DEFENDANT ACKNOWLEDGES ABOVE APPEARANCE AND EXPLANATION OF

7.  DATE OF ARREST ___10/03/2019___

                                            _Keyon Smith_
                                            DEFENDANT

_____              _____
CIRCUIT JUDGE                              ATTORNEY FOR DEFENDANT

## IN THE HEMPSTEAD COUNTY CIRCUIT COURT, ARKANSAS
### EIGHT NORTH CIRCUIT DIVISION 1

# ALIAS BENCH WARRANT

**Case Number:** 29CR-19-382

### FAILURE TO APPEAR

Warrant No.:

**Total Bond to Collect: No Bond**

Date Printed:  January 14, 2020

The State of Arkansas, To Any Law Enforcement Officer in the State:

IT APPEARING that there are reasonable grounds for believing that  has **FAILED TO APPEAR** on the following offenses:

**Counts        Violations**
1    5-26-305(b)(2) DOMESTIC BATTERING - FELONY - 3RD DEGREE
A(AN) CLASS D FELONY
VIOLATION DATE:  02-OCT-19 - -

in the County of HEMPSTEAD, you are hereby commanded to arrest and bring the above named person before the HEMPSTEAD COUNTY CIRCUIT COURT.

Given under my hand and seal of said court this January 14, 2020.

GAIL WOLFENBARGER, CLERK

BY: *Michelle Palmer*

---

**Defendant's Last Known Address:**
KEYEON SMITH
319 AVE C STREET W
HOPE  AR 71801

Height:
System ID:  @1894502
Social Security:

---

### WARRANT RETURN

**BOND POSTED:**$_____    ☐ CASH    ☐ RECOGNIZANCE    ☐PROF    ☐10%

I certify that I have served the within warrant of arrest on the _____ day of _____, 20_____,
at _____
by:    ☐ taking into my custody the within named **KEYEON SMITH** .
       ☐ delivering a copy of this warrant of arrest to the within named **KEYEON SMITH**  personally and releasing the
          accused upon promise to appear in the HEMPSTEAD COUNTY CIRCUIT COURT on the court date stated
          herein.
       ☐ Warrant returned unexecuted
       ☐ Warrant recalled

---

Arresting Officer and Agency
SID Number:_____
Arrest Tracking Number:_____